UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROLAND THOMAS MARTINO and
LESA MARIA MARTINO,

       Petitioners,

v.                                  Case No: 8:21-cv-1636-KKM-JSS

PAMELA CAMPBELL,
CHRISTOPHER SCALZI and
MEMBERS TRUST COMPANY
FSB,

       Respondents.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Lesa Mario Martino's ("Petitioner") Petition for Writ of Habeas Corpus By an Incapacitated Person ("Petition") (Dkt. 1), Petitioner's Motion to Proceed *in Forma Pauperis* ("Motion") (Dkt. 4), Petitioner's Supplements to the Petition (Dkts. 3, 6, 8, 12, 13), Petitioner's Supplement to the Motion (Dkt. 7), and Petitioner's Emergency Motion for Temporary Injunction ("Emergency Motion") (Dkt. 15). For the reasons that follow, the Court recommends that the Motion be denied without prejudice, the Petition be dismissed with prejudice in part and without prejudice in part, and the Emergency Motion be denied without prejudice.

## APPLICABLE STANDARDS

Pursuant to 28 U.S.C. § 1915, the Court may, upon a finding of indigency, authorize the commencement of an action without requiring the prepayment of fees or security.  28 U.S.C. § 1915(a)(1).  When considering a motion filed under Section 1915(a), "'[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty.'"  *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976)).  "[A]n affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents."  *Id.*  As such, a court may not deny an *in forma pauperis* motion "without first comparing the applicant's assets and liabilities in order to determine whether he has satisfied the poverty requirement."  *Thomas v. Chattahoochee Judicial Circuit*, 574 F. App'x 916, 917 (11th Cir. 2014) (citing *Martinez*, 364 F.3d at 1307–08); *see Miller v. U.S. Postal Serv.*, No. 8:13-civ-952-T-17-AEP, 2013 WL 2250211, at *1 (M.D. Fla. May 22, 2013) (noting that the court will generally look to whether the person is employed, the person's annual salary, and any other property or assets the person may possess).

Further, when an application to proceed *in forma pauperis* is filed, the Court must review the case and dismiss it *sua sponte* if the Court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C.

§ 1915(e)(2)(B).  Although pleadings drafted by pro se litigants are liberally construed, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), they must still "conform to procedural rules."  *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002).

## ANALYSIS

In this action, Petitioner purports to bring a petition for habeas corpus on behalf of her father, Roland Thomas Martino ("Mr. Martino"), an incapacitated person. Upon review of the Motion, it appears that Petitioner or Mr. Martino may be financially eligible to proceed *in forma pauperis* in this case.  However, it is unclear from the Affidavit of Indigency whether the financial information provided relates to Petitioner or Mr. Martino.  As such, the Court cannot resolve the Motion without additional information.  In any event, the Court recommends dismissal of the Petition with and without prejudice for the reasons that follow.

Petitioner alleges that Mr. Martino is "being confined" at an assisted living facility in Tampa, Florida.  (Dkt. 1 at 1.)  According to Petitioner, Mr. Martino is under the care of a guardian, Respondent Christopher Scalzi, pursuant to an order entered by the Honorable Pamela Campbell of the Sixth Judicial Circuit Court for Pinellas County.  Petitioner brings claims against Mr. Scalzi, as Mr. Martino's guardian of the person, the Members Trust Company, as Mr. Martino's guardian of the property, and Judge Campbell pursuant to the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1986, and 28 U.S.C. § 2254.  Although Petitioner also states in the Petition that she brings this action against other individuals (Dkt. 1 at 9), those individuals are not named as Respondents in the Petition.

Petitioner seeks many forms of relief, including removal of the guardians, restraining orders, nullification of Florida state court orders, an order referring the case to federal law enforcement agencies for criminal investigation, and the immediate release of Mr. Martino to the custody of Petitioner. (Dkt. 1 at 24.)

## A. Subject Matter Jurisdiction

It appears that the Court lacks subject matter jurisdiction over the claims asserted in the Petition because, as currently pleaded, this case falls within the probate exception to federal jurisdiction. In *Marshall v. Marshall*, 547 U.S. 293 (2006), the Supreme Court explained that while federal courts may have jurisdiction over suits to determine the rights of creditors, heirs, or other claimants against a decedent's estate, such jurisdiction exists only "so long as the federal court does not *interfere with the probate proceedings*." *Id.* at 311 (punctuation and citation omitted). Therefore, the Court held that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." *Id.* at 311–12.

In *Sarhan v. Rothenberg*, the court found that the probate exception precluded cases, like this one, where a petitioner seeks federal review of state court proceedings to administer the estate of an incompetent person. *Sarhan v. Rothenberg*, No. 07-22818-civ-LENARD, 2008 WL 2474645, at *3 (S.D. Fla. June 17, 2008). Relying on Judge Posner's decision in a similar case before the Seventh Circuit Court of Appeals, *Struck*

*v. Cook Cty. Pub. Guardian,* 508 F.3d 858, 860 (7th Cir.2007), the *Sarhan* court found that a person deemed incompetent by the state and his or her property are within the state court's control and therefore beyond the reach of federal court jurisdiction. *Sarhan*, 2008 WL 2474645, at *3.  As explained by Judge Posner in *Struck*:

> Typical adversary proceedings involving domestic relations or probate, such as child-custody proceedings and proceedings to resolve disputes over the administration of a decedent's estate (or as in this case and in *Jones* the estate of a living person who is incompetent to manage his affairs), are, like the nonadversary probate and domestic-relations proceedings, still *in rem* in character. That is, they are fights over a property or a person in the court's control. And a court other than the one that controls the *res*—the subject of the custody battle or the property in the decedent's estate—should not be permitted to elbow its way into such a fight. As the Supreme Court explained in *Marshall v. Marshall*, 547 U.S. 293, 311–12, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006) (citations omitted), "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res.* Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.

*Struck*, 508 F.3d at 859–60.

Likewise, Petitioner asks this Court to assume *in rem* jurisdiction over Mr. Martino and his guardianship estate.  This *res* is already subject to the jurisdiction of Florida state courts.  As such, the probate exception to federal court jurisdiction precludes this Court from assuming jurisdiction over Mr. Martino's person or his property.

It is further unclear whether this Court has subject matter jurisdiction over Petitioner's claims pursuant to the *Rooker-Feldman* doctrine. "It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision." *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). The Supreme Court has explained that "the *Rooker-Feldman* doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).

Recently, the Eleventh Circuit explained that the *Rooker-Feldman* doctrine "applies only when litigants try to appeal state court losses in the lower federal courts." *Behr v. Campbell*, 8 F.4th 1206, 1214, 2021 WL 3559339[1] (11th Cir. 2021). To the extent Petitioner seeks to appeal state court losses relating to Mr. Martino's guardianship proceedings, this Court lacks jurisdiction. However, the Petition only vaguely describes the state court orders at issue, does not attach them to the Petition, and does not include the procedural history of the state court proceedings. Further, Petitioner has not pleaded that she exhausted her state court remedies or that the state court litigation has concluded. *See Martino v. Manning*, No. 8:19-cv-3054-MSS-CPT (Feb. 18, 2020) (concluding that *Rooker-Feldman* did not apply because plaintiff

---

[1] The Westlaw citation is included as a matter of convenience, as this case is not searchable in the Westlaw database by reference to the official reporter.

commenced the federal action while the state court action remained pending).  As such, the Court cannot yet determine whether it has jurisdiction over Petitioner's claims under the *Rooker-Feldman* doctrine.

### B. Standing

Moreover, it does not appear that Petitioner has standing to assert the claims in the Petition on behalf of her father.  "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.,* 641 F.3d 1259, 1264–65 (11th Cir. 2011) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).  Petitioner is not Mr. Martino's legal guardian.  As such, "[i]t would seem to follow that [Petitioner] does not have standing to assert legal rights on [Mr. Martino's] behalf."  *Sarhan*, 2008 WL 2474645, at *5. Generally, Petitioner has standing to "seek redress for injuries done to [her], but may not seek redress for injuries done to others." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972).  Insofar as Petitioner seeks to bring claims for harms caused to Mr. Martino, the Petition fails to establish her standing to do so.  *Sarhan*, 2008 WL 2474645, at *5 ("Under these provisions, there is a serious question whether Dr. Sarhan can pursue the relief he seeks to the extent he does so on behalf of his mother, where he alleges that a state court has already appointed someone else to act as his mother's legal guardian.").

### C. The Eleventh Amendment and Judicial Immunity

Even assuming the Court has subject matter jurisdiction over this action, insofar as Petitioner seeks monetary damages in the Petition, "[t]he Eleventh Amendment bars Martino's claims to the extent they are brought against Judge Campbell in her official capacity." *Martino v. Campbell*, No. 8:20-cv-694-T-33SPF, 2020 WL 2307559, at *1 (M.D. Fla. May 8, 2020). "Eleventh Amendment sovereign immunity prohibits federal courts from entertaining suits brought by citizens against a state, including its agencies and departments." *Uberoi v. Supreme Court of Fla.*, 819 F.3d 1311, 1313 (11th Cir. 2016). The Eleventh Amendment also "prohibits suits against state officials where the state is, in fact, the real party in interest." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). "Suits against state officials in their official capacity are essentially actions against the state." *Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018). Florida Circuit Court Judges are "arms of the state for Eleventh Amendment purposes." *Badillo v. Thorpe*, 158 F. App'x 208, 213 (11th Cir. 2005). Therefore, the Eleventh Amendment bars Petitioner's claims for damages against Judge Campbell, a Florida Circuit Court Judge.

Additionally, Judge Campbell "is entitled to absolute judicial immunity for her rulings in the guardianship action." *Martino*, 2020 WL 2307559, at *1. "A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court." *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018). Judicial immunity extends to all "judicial acts regardless of whether [the judge] made a

mistake, acted maliciously, or exceeded his authority." *Id.* at 1331. Petitioner does not allege any wrongful conduct by Judge Campbell outside of her judicial acts in the guardianship proceeding. As such, Judge Campbell is entitled to absolute judicial immunity. The undersigned therefore recommends that Petitioner's claims for damages against Judge Campbell be dismissed with prejudice. It is unclear whether Petitioner seeks injunctive relief against Judge Campbell, so the undersigned will not address whether judicial immunity would also bar such claims. *See Taveras v. Schreiber*, No. 6:19-cv-1394-ORL-41EJK, 2019 WL 6683154, at *4 (M.D. Fla. Dec. 6, 2019).

### D. Habeas Relief

Insofar as Petitioner seeks a writ of habeas corpus and collateral review of the state court guardianship proceedings, federal habeas relief is not an available remedy. "The Court's habeas jurisdiction is limited to those where a person has been confined by the state largely due to criminal convictions. Federal habeas relief is not available to remedy or challenge state court judgments involving parental relationships, termination of parental relationships, or, as in this case, guardianship proceedings." *Sarhan*, 2008 WL 2474645, at *6.

### E. Federal Rule of Civil Procedure 8

To the extent Petitioner also asserts claims against non-judicial parties, Mr. Scalzi and the Members Trust Company, the Petition fails to state a claim upon which relief can be granted. Even though liberally construed, *pro se* filings must "conform to procedural rules." *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002). Under Rule Federal Rule of Civil Procedure 8, a complaint must contain a short and plain

statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Complaints that violate Rule 8(a) are often referred to as "shotgun pleadings." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) ("Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"). The Eleventh Circuit has identified four general categories of shotgun pleadings. *Id.* at 1320–21. The first type of shotgun pleading is a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. The second type of shotgun pleading is the complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. The third type of shotgun pleading is one that fails to separate into a different count each cause of action or claim for relief. *Id.* at 1322–23. The last type of shotgun pleading is one that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

The Petition falls into the second, third, and fourth types of shotgun pleadings. The Petition include numerous allegations without factual support.  For example, in the "Statement of Facts," Petitioner titles the second section as: "The Abomination of this Florida Human Trafficking Enterprise that Permeates Every Florida Probate Court and is Protected by All Other Courts; Law Enforcement Agencies; and Oversight Committees is Exemplified by the 'No Action' Response by Judicial Qualification Committee ('JQC') that Defies the Entire American System of Criminal Law."  This section of the Petition goes on to argue for the removal of Mr. Martino's guardian. (Dkt. 1 at 13–14.)  *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (describing a complaint as "a perfect example of 'shotgun' pleading because it was "virtually impossible to know which allegations of fact [were] intended to support which claim(s) for relief").  Additionally, the Petition does not separate its allegations into separate claims for relief or delineate the specific actions of Respondents, separate from the other numerous alleged wrongdoers.  Thus, the Petition fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland*, 792 F.3d at 1323.

### F.  Power of the Courts

Furthermore, Petitioner seeks relief that the Court is not empowered to provide. Petitioner's prayer for relief includes requests for, among others, "[a]n order transferring this matter to Federal law enforcement for criminal investigation and requiring their subpoena of all guardian records . . . and the wiretap of all judicial proceedings of Judge Campbell, Caitlin, Tibbals, and Lefler." (Dkt. 1 at 24.)  The

decision whether to investigate or prosecute violations of federal criminal law rests exclusively with the executive branch of the United States, not the courts. *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996); *see Dodd v. Human Trafficking*, 8:20-cv-1202-T-VMC-CPT (M.D. Fla. June 16, 2020), *report and recommendation adopted*, 8:20-cv-1202-T-VMC-CPT (M.D. Fla. June 25, 2020).  Further, fundamental principles of federalism prohibit a federal court from compelling the State of Florida to enforce its state criminal laws in a particular manner. *Printz v. United States*, 521 U.S. 898, 918 (1997) ("It is incontestable that the Constitution established a system of dual sovereignty.") (internal punctuation and citation omitted); *see id.* at 922 ("The power of the Federal Government would be augmented immeasurably if it were able to impress into its service—and at no cost to itself—the police officers of the 50 States."); *see also* U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.").

### G. Proceeding *Pro Se*

Insofar as Petitioner seeks to proceed *pro se* to assert claims on behalf of her father, Mr. Martino, Petitioner is unable to do so.  The law of this circuit prohibits non-attorneys from proceeding *pro se* in an action brought on behalf of another.  *See Devine v. Indian River Cty. Sch. Bd.*, 121 F.3d 576, 582 (11th Cir. 1997) ("[P]arents who are not attorneys may not bring a *pro se* action on their child's behalf—because it helps to ensure that children rightfully entitled to legal relief are not deprived of their day in

court by unskilled, if caring, parents."); *Conner v. Pennsylvania Nat. Mut. Cas.*, No. 07-14301-civ, 2008 WL 2944662, at *1 (S.D. Fla. July 31, 2008) ("Plaintiff's lack of legal ability will hinder his ability to litigate this cause of action and the determination of whether any agreements exist will directly affect [the incapacitated person] as the real party in interest."); *Sarhan*, 2008 WL 2474645, at *5 n.1. "[A]llowing a non-attorney guardian to bring a suit for the benefit of the ward invites abuse and potential for erosion of an incompetent person's rights." *Conner*, 2008 WL 2944662, at *1. Petitioner is not an attorney and therefore cannot represent the interests of Mr. Martino without the assistance of counsel. The undersigned does not recommend dismissal on this basis, as this deficiency may be cured.

### H. Injunctive Relief

On September 17, 2021, Petitioner filed an "Emergency Petition for Temporary Injunction," which the undersigned construes as an emergency motion for a temporary restraining order and preliminary injunction. (Dkt. 15.) In the Emergency Motion, Petitioner seeks the immediate release of Mr. Martino to Petitioner. In support, Petitioner relies exclusively on selections from a news article discussing the dangers of the COVID-19 pandemic for nursing home residents.

A temporary restraining order may be issued without notice to the adverse party if (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed.

R. Civ. P. 65(b)(1).  Temporary restraining orders ("TRO") or preliminary injunctions may be issued when the movant demonstrates: (1) "there is a substantial likelihood of success on the merits"; (2) "the TRO or preliminary injunction is necessary to prevent irreparable injury"; (3) "the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant"; and (4) "the TRO or preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001).

The undersigned recommends that the Court deny Petitioner's Emergency Motion without prejudice.  As set forth above, it is not clear that this Court has jurisdiction to grant the relief requested in the Motion—the release of Mr. Martino from civil confinement as ordered by the Florida state court.  Moreover, the Emergency Motion does not include an affidavit showing immediate or irreparable injury may result to Mr. Martino in the absence of relief or an attorney certification. *See* Fed. R. Civ. P. 65(b)(1).  Finally, Petitioner has not established a substantial likelihood on the merits of her claims, as set forth herein, and it is unclear that Mr. Martino is in immediate danger of irreparable injury.  The Emergency Motion only alleges, in conclusory fashion, that the COVID-19 pandemic poses additional dangers to seniors and nursing home residents generally.  (Dkt. 15 at 2–3.)

Accordingly, it is **RECOMMENDED**:

1.  Petitioner's Motion for Leave to Proceed *in Forma Pauperis* (Dkt. 4) be **DENIED** without prejudice.

2.  The Petition be **DISMISSED** with prejudice insofar as Petitioner brings claims against Judge Campbell that are barred by the Eleventh Amendment or the doctrine of judicial immunity.

3.  The Petition otherwise be **DISMISSED** without prejudice and with leave to file a petition or complaint that establishes the Court's jurisdiction and complies with the Federal Rules of Civil Procedure. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.") (internal quotation and citation omitted).  The undersigned recommends that the amended pleading, if any, be due within thirty (30) days of the date this Report and Recommendation becomes final.

4.  In the event the Court grants Petitioner leave to amend, however, the undersigned recommends that the Court also provide Petitioner thirty (30) days to retain counsel.

5.  Petitioner's Emergency Motion for Temporary Injunctive Relief (Dkt. 15) be **DENIED** without prejudice.

**IT IS SO REPORTED** in Tampa, Florida, on September 17, 2021.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Kathryn Kimball Mizelle
Counsel of Record
Unrepresented Party